Good afternoon, your honors. Vince Bronco, Federal Defenders, on behalf of Mr. Franco. The experts agreed that there was little to no risk that Mr. Franco would re-offend or that he posed a risk to minors. The experts also agreed that living at his family home was better for his rehabilitation, even though it was adjacent to a park. In light of these circumstances, and all the unique circumstances of Mr. Franco... I don't know the other judges' views. I agree with you with regard to both the procedural deficiencies and with regard to the requirement about staying away from minors. I think that was substantive and reasonable. The problem I have is I just don't see how a judge can authorize directly or indirectly, which I think this judge tried to do, a supervised release condition that on its face violates state law. That's the problem that I have in this case. Let me go directly to that. I think my first answer would be... Tell me what you're after. A remand for the district court to make an individualized determination of whether or not Mr. Franco should be allowed to live in that home, notwithstanding the existence of California Penal Code 3005. How can that be done? How can I order somebody or authorize somebody in the face of the general condition, standard condition, not to violate state law? The actual standard condition is not to commit a state crime. And there's no indication that this is actually a state crime that's penalized by anything. The only way the state of California has been enforcing this provision, and it's within the parole chapter of the guideline, is as a condition of state law. It's not a parolee. Correct. So it doesn't apply to him. Correct. All right. Oh, I didn't get that from your brief. It's definitely in the Rule 29 and in the California cases. The state of California has never enforced this, as far as I know, to anyone outside of a California parolee. Okay. Let me ask you another question, if I may, because this candidate kind of troubles me a bit. The judge, wrongly, wanted to impose upon the lawyer, the defense attorney, the obligation of notifying the attorney general in the event of a constitutional challenge or a federal challenge to state law. But it seems to me, what I'm baffled by, quite candidly, really doesn't have anything to do with the outcome of this case, is why wasn't the judge's express invitation to go ahead and file a memorandum and get the issue teed up a year and 14, 16 months ago? But here we are. I mean, where's your client been in the meantime? He's been on supervised release and complying with these conditions. Where is he living, is my question. He's still living in the trailer. And quite candidly, I don't understand why the judge's express and clear to me signal saying, look, brief it, I'll decide it. And that's not been done, apparently. Because we, I mean, if you look at the procedural history, for approximately nine months, we've been saying, you know, you have to change this condition, you have to let him live in the home. And what we're asking for is just an individual determination of looking at the facts of Mr. But why? Why don't you have the judge clear that issue away entirely? It's not even clear what we're supposed to do. I mean, I'm still unclear. Even after this time, what am I supposed to file? That's right. And the judge, and I've done this myself. I don't know if Judge Nguyen did what she was doing. I'll say one thing at the outset and then have another hearing. I'll head in another direction. I mean, he's going back and forth. And he finally says, brief it. And enough said on this subject. It's not really on point. I just want to express I wish you had. I understand. And let me go to direct you to Excerpt of Record 214. And remember, what we were asking for is this individual determination. And this is the district court. I understand that. I think the point that we're getting at, and I'm in the same place that Judge Carr appears to be, which is that you can have us send it back and say, look, you need to specifically articulate individualized reasons why he shouldn't be permitted to reside with his mother and brother seems to be the best situation for him when you consider the overall goals that the judge and everyone, frankly, hopes to accomplish during the period that he's on supervised release. But then that gets you only so far. As I understand it, under California law, if you are required to register pursuant to Penal Code Section 290, you have to comply with this provision that you not reside within 2,000 feet of any public or private. What the actual statute says is it is unlawful. But the thing is, there's no penalty provision to that statute. So that's a state law, though. So I think, you know, you need to kind of somehow get around that. It's difficult as a district judge to say, I know there's a state law out there. You can't reside within 2,000 feet. It says public or private school park where children regularly gather, and this home is next to a park where children regularly gather. What you're asking for, it seems to me, is that the district judge look the other way and allow him to violate that provision. That is not what we're asking for. Well, first of all, it's not clear who that law applies to. What his condition of release is for supervised release is he not commit a crime. So that there has to be this fundamental question, is this a crime or not? And this California law is within the code provision that applies to parolees. The only indication that California has ever in practice enforced this law is to California parolees. So what we're saying, what basically the district court was asking us is to notify somehow the attorney general. You're talking about people who have been convicted of felonies. We don't parole misdemeanors. Yes, but it's a condition of California parole, not a condition of federal supervised release. Functionally, what the district court is doing is enforcing a condition of California parole on Mr. Franco. Is it enough if we simply find procedural failure to comply with the necessary procedures and send it back without talking about the two substantive issues? Send it back for resentencing? As long as you make it clear, like some of the cases in Rudd and Collins, that the district court is to take a careful look at this and to really express its reasons. And that some of this may be substantively unreasonable, but leave it for the district court to find out what is reasonable. And let me just say one other thing, if I may. You know, I know that the courts of appeals routinely say that the statement of reasons is to perfect the record for appeal, and to make clear that the judge considered the factors. My view as a district judge is no. It's to tell the defendant why you're doing what you're doing. Because the uninformed defendant is going to be the embittered defendant. That's my view, and I hope you can keep that in mind. And I was kind of struck by the fact that, unlike our circuit, where I have to ask you, do you have any objections to any part of these proceedings, and that's when you're supposed to stand up and say you didn't do the factors correctly. That's not the law here. But I'm only saying keep that in mind. Had counsel, the prosecutor perhaps, been a little more attentive and said, Judge, could you be a little more clear on 3553A? I probably wouldn't be here, but such is life. Here we are. Good luck. I'd like to stay on the rest of my time for rebuttal. Well, let me ask you this. I've been trying to figure out a way to help you with this. Megan's law doesn't apply to him. He's not a felon. He's not on parole. The judge has already indicated what initially the recommendation was for how many months? From the probation office. How many months did they recommend? For the original sentence? Yeah. 27 months originally. And the district court eventually went down to six months of custody.  And then it turns out that we have the reports that his viewing these films, these pictures, were connected with his guilt feelings over the death of his sister's child. And I think there was one other in there. And that for his mental health, he really needs to be with his mother and with his brother. And the impediment to that is that it's within this 2,000 feet of a park. Right? That, to me, is a non-existent impediment because it's not a crime for Mr. Franco to be within 2,000. I understand that. Okay. So this is what you want to present to the district judge. And then you want to present, perhaps, some other conditions. That he wear a bracelet on his ankle so that his movements can be traced. That perhaps he sets up times when he reports to his probation officer so we can keep track of him. And he has been on monitoring at times. I don't know if he currently is, but I know he's gone through at least six-month periods at a time with monitoring and never went outside of where he was supposed to. After he was sentenced? Yes. So he's monitored, but he's still not allowed in the home. That's what we think is unreasonable, is you have all these other conditions in place that ensure the public safety, but he can't get the best place for his rehabilitative needs where he would be the most safe. Well, why can't you move to modify the conditions of his release? That's what we were doing. We were trying. That's exactly what we were doing. He's a reasonable person, isn't he? He generally is, and he's very reasonable in this case. Yeah, and he understands what's going on here. So I didn't know that all of this was limited to parolees. I was never aware of that. And so there's new things that have come up here. Was he aware of it? I'm not sure if he's aware or not. Did you ever call that to his attention? We cited the cases, the California cases to him, or at least the Taylor case where San Diego called it, did an as-applied challenge for San Diego, and that case is a parole condition. Yes. The Supreme Court of California has taken that case. I don't think it was put as explicitly as here. Well, they're looking at the constitutionality of the statute. I'm assuming you're keeping a close eye on that because, depending on the ruling, it could be very favorable to Mr. Franco. Yes, again, but all the cases going through the California system are as applied to an individual person and individual locations. So, I mean, an as-applied challenge really just looks at is it unfair as a condition of California parole to make them live this far away as an individual, and that's all we were asking this district court to do as a term of federal law. Well, what's the issue that's before the California Supreme Court now? It's whether, as a class, parolees in San Diego, whether or not it's unconstitutional to enforce the 2,000-feet restriction on them. And they're going to find out how crowded San Diego is and how you can't find a place to live, basically, in San Diego. And so they have that. They've taken that. They've had that up there for over a year now and haven't decided it. Has there been argument on it? I'm not sure. What do you mean you're not sure? Don't you follow this? I checked on to see if it was ruled on. When preparing for argument, it wasn't ruled on. I didn't check to see if it was argued or not. I assume it had been pending for so long that it was argued. Thank you. All right. I bought Giuliani's biography. Remember Giuliani? Yes, Your Honor. It was $25. The only thing I remember about it is this was his rule. Don't assume anything. Is it a crime or not? I mean, that's clearly the impression I got. I did not understand that this relates in terms of a condition of parole, but there's no criminal penalty attached. Is that the way the statute is? My understanding is it is a crime. But, again, this was not an issue, it appears, that was fully briefed before the district court, given. I think before us, because the word crime kept appearing, and that's been my stumbling block. And if it's not there, then that's fine. They should go back and make that clear to the court. I don't think that the judge did the job that we are supposed to do. And quite candidly, as I said before, I think that's because the government didn't say time out, Judge. And it's a very common thing. As a judge, you go in, you've wrestled with, well, what do I do in terms of sentencing this individual? You get to the conditions, usually you sort of, you know, put them in whatever thinks right. It's tough in child pornography cases. And you get to, if you even remember, and sometimes I forget, the 3553A factors. I mean, by then, this is sort of okay. You've done the heavy work, and now you're connecting the dots. And I really think it's the government's responsibility, just as it is when a plea is being offered, to follow to make sure those dots are connected. That's all. Well, Your Honor, I take responsibility for that. I was the prosecutor at the sentencing hearing for the revocation proceedings. So I take full responsibility. I don't mean to be critical. I'm just saying, you know, it's, and I do think that the, because as I said, I think that requirements are for a reason that really relates to the defendant, the relationship between the defendant, the sentence, and the court. And it's important that we judges make sure that we tell the defendant why we are doing what we are doing in the context of the factors. That's all. And, Your Honor, I guess where I respectfully disagree, honestly, I walk in here realizing it's an uphill battle. And if minds have been made, I understand. But we haven't discussed the case. You know, we don't conference the cases prior to that. We didn't talk about these cases coming to court. But what's been vocalized, I lived that case for that past year. I had just come back from maternity leave and went straight to court. I hadn't handled his sentencing. And it was hearing after hearing after hearing. And at the time of the sentencing hearing, it seemed readily apparent to me at the record that the court was making these statements. And we have over 600 pages of records of these hearings. The court started off that sentencing hearing, that final sentencing hearing, December 3rd, if there ever was, to paraphrase, if there ever was a breach of trust, this is it. Now, in re-reviewing the record, there was something that stood out to me. Again, I was looking at Dr. McCullough's report. And I had met with Dr. McCullough. I had prepared him for various hearings. And he had a very positive report right at the end before he learned of the defendant's deception, so to speak. And his recommendations that defendant was low risk was based on seven reasons. And two of those reasons were really based on the defendant's ongoing deception that he was living in the trailer, which was not an ideal condition by any means, and then subsequent another that he was just helping out at the home where need be. Again, reasonable minds can disagree, and Your Honor is the one deciding this. But it was readily apparent about this ongoing deception, how is it that the court can trust someone who's being deceptive and not registering as a sex offender at a house that directly abuts a children's playground, and that the family is complicit in this issue. The mother had attended all these hearings. She lied to the probation officer as well. So there was this complacency to then say, you are allowed to have unsupervised conduct with children under 18. There are mental health issues. He's a very sympathetic defendant. If we believe in looking at this record that the trial judge failed to sufficiently articulate reasons why certain special conditions were imposed, are you in agreement that the appropriate thing to do would be to send it back open so that the district judge can then articulate reasons and then some of these issues regarding whether this particular residency requirement would be in contravention of California law? Because the issue really wasn't briefed or discussed in the court below at all. Now, the defense would then be free to argue that these conditions apply only to California parolees or wouldn't be in violation of state law for him to reside at that location, and there would be questions as to whether it applies to all individuals who have to register as a sex offender regardless of whether you're on state parole or not. I don't know that we should take up all of those issues in the first instance. I agree with Your Honor, and I also agree with Your Honor. The district court did make clear towards the final two hearings very explicitly as to what his directive is, what he wanted the defendant to do. And it was, look, the defense counsel and I have litigated for several years, and many judges, they have their ways of directives of how they want the issue presented to them. Some will decide on the fly this is the issue, but I think for something where you're dealing with a potential constitutional challenge, the district judge made very clear, I need you to brief this issue. I need you to phrase it in such a way so it can be certified, so we know exactly what we're arguing. And at this point to then say at the 11th hour, so to speak, well, we think this just applies to parolee conditions without further briefing. Can I ask you a question? I just don't know. Let's assume for the moment that two of us, somebody else agrees with me that it was procedurally defective. What would you prefer, that we go to the next, that we say anything at all about the substantive issues, except that they may be reconsidered? My point is, if it goes back, will it go back for a renewed consideration ob initio of whether or not these conditions are suitable and appropriate today, 14 months later, or will it solely be limited if all we talk about is the procedural deficiencies as we see them, and for the judge to go back and perhaps even without a hearing say, oh, look at the transcript, oh, this is why I did this. Do you see what I'm saying? What happens which way, if you know, because I don't. It would make sense, I guess, to just deal initially with that first issue, because if you find procedural error, it's not necessarily then that the case, it's going to get remanded anyway, so to speak. And I suppose that the public defender could come in with a motion to modify. In other words, I think there are two different procedural ways that could get to the question of whether another fresh look at this condition, and also the whole housing thing, and an argument, as I say, I don't think that was raised, so thank you. The way I think about this, what seems to be the most important item is to have him stay at home with his mother and his brother. Now, that doesn't mean he can go in the park, and it wouldn't include going in the park, and it wouldn't include a bracelet. It would include him reporting to the probation officer, and we might require that when he leaves the house, and he wants to go downtown or wherever he's going, that he take a certain route where he avoids the park. And in the meantime, the California, do you know the status of the case that's before the Supreme Court? Your Honor, it hasn't been decided. Again, I can't answer if it's been argued orally. I did quote what the question was phrased. I wrote it down. Does the residency restriction of Section 3003.5, when enforced as a mandatory parole condition against registered sex offenders paroled in San Diego County, constitute an unreasonably statutory parole condition that infringes on their constitutional rights? So in that respect, it could be applied just to the parolees, but at the same time, I haven't researched it. And so that's the frustrating part about it. Here is that the Attorney General has taken the position, Kamala Harris has taken the position, that Jessica's law residency restrictions applies only to parolees. I read that last night somewhere, too. Yeah. So again, it wasn't a great report. What I would try to do is, you know, he's staying in his father's trailer. There's no water in there, right? There's no bathroom in there. That's the way it is there. His father is a mean person. Beats up on the mother, beat up on him. Isn't that right? He did at one point. He did, yeah. And, yes, he was very mean in the past. Very mean in the past, whatever it is. So here he is living in this box. No amenities there whatsoever. And so my concern is, I think, for his mental health, from what I could gather from reading these reports, he stays with his mother and with his brother, and he's restricted from going into that park. He's got, you know, whatever is necessary to keep him away from the park. And with a bracelet, and then we'll just have him report, and he's under the aegis of the probation officer, and we'll wait to see what the California Supreme Court does. And then, in other words, I would give Judge Boskowitz, set up a program using his judgment and insight, and see that this young man is living with his mother and brother in a better environment for him, and reduce any danger to any child as close to a minimum as you can possibly get. And he's never committed any other crimes. Not that I'm aware of. Your Honor, I see my time is up, but may I make one last pitch? We can give you more time if you want some time. Well, I just, again, if this case was before Chief Judge Moskowitz, today it might be viewed differently, because of the fact that Mr. Franco has been on a longer period of supervised release and has been doing successful. But again, looking at the record, he hadn't been evaluated. He had a mental health condition where he was punishing himself by watching children being tortured in sexual ways. And the court was dealing with an issue of, initially, should this person who has not been properly assessed by the court live adjacent to a playground? And during that time period, as the defendant was trying to show his compliancy, there was the intervening act of the deception, the violation of Section 290. Well, that's bad, but who knows? Maybe he was in an absolute desperate state. And I don't see a connection between those very unwelcome events as a district judge. You lie to a probation officer, you lie to me, okay? My view. Yeah. Between that and this absolute prohibition against contact with minors, that the evidence, as far as I can tell, strongly supports, at the time anyway, that that condition was greater, did not meet the sufficient but not greater than necessary mandate of 3553A. That's all. Yeah, I disagree, because respectfully, again, Your Honor, I don't see it as an absolute prohibition because it was unsupervised contact with children. Yeah, but I'm not sure. That, again, I don't think was made. Maybe I misread it in the condition itself. Is that in the condition? He not have unsupervised contact with children. It must be with the exception of his younger brother. It must be with a supervising adult who is aware of his condition prior to approval of the probation officer. And his argument was, I'm employed, I'm going to school, this could be a potential problem. And as we've said, if he's not knowing in violation of it, it's not a problem. I'm sorry, Your Honor. There's no risk of adverse consequence for the kinds of activities, ordinary activities he's talking about. No. Okay. So that's the way how it was. So, Your Honor, I think the court was correct in maintaining that condition, especially given the ongoing deception. Well, district judges can modify conditions at any time, and depending on what we do, we'll get a chance to take another look at all of these conditions. But we certainly appreciate your argument. Thank you very much. And we obviously hope that you'll uphold the decision, but at the same time, should you make any decision, we will work with Chief Judge Moskowitz. Thank you very much. I just wanted to clear up that defense counsel proffered at the sentencing hearing that both experts were advised of the revocation conduct and neither one changed their opinion. And Dr. McCullough had sent, I believe, an email to the government saying so. Thank you. And to the extent that I've criticized either of you, I hope you understand the spirit in which I've done it. It's not a negative way at all. Okay? It really isn't. Okay. Thank you. This matter is submitted.
judges: Carr, Pregerson, Nguyen